IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

TANNER W. ROTH, *et al.*,

               Plaintiffs,

     vs.

LLOYD J. AUSTIN, III, *et al.*,

             Defendants.

8:22CV3038

DEFENDANTS' REPLY BRIEF IN
SUPPORT OF MOTION TO DISMISS
AND MOTION TO SEVER

**INTRODUCTION**

Defendants' motion established that Plaintiffs' claims under the Religious Freedom Restoration Act ("RFRA") and the First Amendment should be dismissed, in part because Plaintiffs' claims are not ripe for judicial review and they have failed to exhaust their administrative remedies. *See* Defs.' Br. in Supp. of Mot. to Dismiss & Mot. to Sever at 16–24, ECF 41. In response, Plaintiffs claim that the mere act of asserting a RFRA claim allows judicial review at this juncture. Br. of Pls. in Resp. to Defs.' Mot. to Dismiss at 5–14, ECF 77. But that argument overlooks the fact that many Plaintiffs have not received a final determination on their religious accommodation request, and even those Plaintiffs who have received a final determination may avail themselves of additional intra-service remedies that may result in the relief they ultimately seek. Binding Eighth Circuit precedent requires Plaintiffs to exhaust these remedies.

Plaintiffs also attempt to avoid severance by mischaracterizing their claims as "identical" to one another. ECF 77 at 18. To the contrary, Plaintiffs' religious liberty claims require individualized inquiries into each Plaintiff's situation to ascertain whether the vaccine requirement burdens that Plaintiff's particular religious beliefs or practices and whether there is a compelling interest given that Plaintiff's unique circumstances and job duties. This need for a plaintiff-specific inquiry prevents Plaintiffs from meeting the joinder requirements under the federal rules. And even were Plaintiffs to meet those requirements, the Court should exercise its discretion to sever the Plaintiffs to avoid the chaos and prejudice that would result from litigating 36 separate cases on 36 separate administrative records in one civil action. After severance, there is no dispute that several Plaintiffs would be in the wrong venue. Their claims should be dismissed.

In sum, the Court should grant Defendants' motion to dismiss under Rule 12(b)(1) or 12(b)(6) or, alternatively, sever the claims into separate actions and dismiss those lacking proper venue under Rule 12(b)(3).

## ARGUMENT

**I.** **The Court should dismiss Plaintiffs' claims because they are not ripe, and Plaintiffs have failed to exhaust administrative remedies.**

    A.    <u>Many Plaintiffs' Claims Are Not Ripe.</u>

In their motion to dismiss, Defendants explained that the claims of many of the 36 Plaintiffs are unripe because the Air Force has not reached a final decision regarding their religious accommodation requests or because the Air Force has not made a final determination on separation or reassignment to the Individual Ready Reserve ("IRR"). ECF 41 at 16-19. Plaintiffs' opposition brief does not establish otherwise.

First, there is no dispute that the Air Force has not rendered final decisions regarding the requests of 16 Plaintiffs. ECF 77 at 6. Plaintiffs assert that the claims of these 16 service members are nonetheless ripe because "[a]ll relevant facts were collected by the time the airman filed his RAR and the RRT wrote its report," and the legal issues "were fully developed from the moment the RAR was filed." *Id.* at 6–7 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)). But in light of the absence of a final decision, "there has been no final agency action and thus, the action is not ripe for judicial intervention under the *Abbott Laboratories* test." *Lane v. USDA*, 187 F.3d 793, 795 (8th Cir. 1999); *see Olson v. USDA*, No. CV 06-3273 (JSM), 2008 WL 11464710, at *8 (D. Minn. Mar. 28, 2008).

No precedent supports Plaintiffs' efforts to eviscerate the fitness component of the ripeness inquiry. Notably, the cases on which they rely did not arise in the context of military decision-making or discharge proceedings. *See Hawkes Co. v. U.S. Army Corps of Eng'rs*, 782 F.3d 994,

1002 (8th Cir. 2015) (challenge to Approved Jurisdictional Determination was ripe given that "[a]bsent immediate judicial review, the impracticality of otherwise obtaining review, combined with 'the uncertain reach of the Clean Water Act and the draconian penalties imposed for the sort of violations alleged in this case . . . leaves most property owners with little practical alternative but to dance to the EPA's [or to the Corps'] tune"), cited in ECF 77 at 6; *Standing Rock Hous. Auth. v. EEOC*, 585 F. Supp. 2d 1112, 1120 (D.N.D. 2008) (case involving administrative subpoena was not fit for review), cited in ECF 77 at 6; *Oklevueha Native Am. Church of Haw., Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012) (plaintiff's failure to request an exception from the Drug Enforcement Agency did not render claim unripe). By contrast, courts have correctly recognized that service members challenging a COVID-19 vaccine directive must at least receive a final decision from the applicable Service prior to bringing suit. *Vance v. Wormuth*, No. 3:21-cv-730, 2022 WL 1094665, at *5-7 (W.D. Ky. Apr. 12, 2022); *Roberts v. Roth*, ---F. Supp. 3d---, 2022 WL 834148, at *4 (D.D.C. Mar. 21, 2022); *Robert v. Austin*, --- F. Supp. 3d. ---, 2022 WL 103374, at *2-3 (D. Colo. Jan. 11, 2022), *appeal filed*, No. 22-1032 (10th Cir. Feb. 2, 2022).

Similarly, as to the nine non-reserve Plaintiffs whose appeals have been denied by the Surgeon General,[1] their claims are unripe because separation proceedings have not concluded. As the court in *Roberts* recently explained, "military discharge complaints are not ripe at the commencement of discharge proceedings; they are ripe only after a plaintiff has been discharged." 2022 WL 834148, at *4–5; *see also Smith v. Harvey*, 541 F. Supp. 2d 8, 13 (D.D.C. 2008).

---

[1] The remaining 11 Plaintiffs—Gavic, Priebe, Roberts, Edwards, Airman #1, Airman #3, Airman #4, Airman #5, Airman #6, Airman #7, and Airman #9—will not be separated, but instead will be reassigned to the IRR. Contrary to Plaintiffs' assertion, ECF 77 at 3, Defendants do not contend that the claims of these 11 Plaintiffs are unripe, *see* ECF 41 at 16–17. Rather, Defendants have stated that the claims of these Plaintiffs should be dismissed on other grounds, including failure to exhaust. *See id.* at 17 n.9 & *infra*.

Plaintiffs' speculation that these nine service members will be discharged is insufficient to establish ripeness. *Roberts*, 2022 WL 834148, at *4. Moreover, Plaintiffs cannot advance their argument by insisting that they "are not challenging the timing of their discharge or transfer to IRR, nor are they seeking to alter the terms of the discharge, transfer, or punishment they face[,]" but rather "are challenging the decision of the Air force to deny their RARs." ECF 77 at 5. In that case, this Court should dismiss the suit because the denial of a religious accommodation request or appeal, standing alone, does not cause an injury-in-fact and is not a substantial burden on the Plaintiffs' purported religious beliefs. The *consequences* that Plaintiffs face for failing to follow a lawful order to receive the COVID-19 vaccine after the denial may give rise to a substantial burden, but those consequences, if any, are far from certain. Yet, Plaintiffs' Complaint leaves no doubt that their challenge is based on the potential to be separated from the Air Force or transferred to the IRR. *See, e.g.*, Compl. ¶ 2, ECF 1 (alleging that "Defendants are implementing a policy that forces Plaintiffs to submit to the COVID-19 vaccination in violation of their religious beliefs or face involuntary separation from the military service"). Plaintiffs also overlook the fact that the separation procedures provide them an avenue to obtain the relief they ultimately seek in this case, i.e., retention in the Air Force notwithstanding their unvaccinated status. *See* Decl. of Col. Elizabeth M. Hernandez ¶¶ 11–16, ECF 38-4; *Roberts*, 2022 WL 834148, at *5 ("Put simply, the doctrine of prudential ripeness ensures that Article III courts make decisions only when they have to, and then, only once."); *infra* Part I.B.1-3.

Plaintiffs have likewise failed to demonstrate that they will suffer any cognizable hardship if their claims are not reviewed at this juncture. Plaintiffs first assert that review is not premature because they are suffering "constitutional harm[.]" ECF 77 at 7. As the Court has determined, however, "Plaintiffs are not likely to succeed on the merits of their RFRA claim[,]" and "[t]his

deficiency causes the Plaintiffs to be unable to demonstrate irreparable harm."  Mem. & Order at 59–60, ECF 78.  Other harms alleged by Plaintiffs, ECF 77 at 7–8—such as the loss of training or flying opportunities—are not based on their requests for religious accommodation, but rather on the fact that they are unvaccinated, *see* Mem. & Order at 6–7.  Still other alleged harms, such as the alleged loss of future retirement benefits, ECF 77 at 7–8, are neither imminent nor irreparable, Hernandez Decl. ¶ 16.  And nearly all involve non-justiciable operational decisions.  *Watson v. Ark. Nat'l Guard*, 886 F.2d 1004, 1008 (8th Cir. 1989) (noting "the inappropriateness of judicial intrusion into matters affecting military discipline, training, or readiness").  Accordingly, Plaintiffs have not shown "significant practical harm" that would require judicial review at this point. *Parrish v. Dayton*, 761 F.3d 873, 875 (8th Cir. 2014).

Moreover, given that the Air Force may grant the exemption requests of 16 of the Plaintiffs, any harm from being ordered to get vaccinated or facing adverse discipline action rests "upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998); *see Roberts*, 2022 WL 834148, at *5 n.3 (concluding that "the hardship to [the plaintiff] is mostly theoretical at this point since he has not been actually discharged"); *Vance*, 2022 WL 1094665, at *7 (noting that "[n]o separation proceedings have been implemented nor are they imminent as his appeal and the IDES process are pending, so he is not, at present, being put to any further choice in the matter"); *Robert*, 2022 WL 103374, at *2–3 ("Plaintiffs' contention that they may be subject to discipline for refusing to take a vaccine appears to be based on nothing more than speculation."); *see also Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 811 (2003).  Those active duty Plaintiffs whose appeals have been denied but have not been separated similarly cannot establish hardship.  *Standage v. Braithwaite*, 526 F. Supp. 3d 56, 92–94 (D. Md. 2021) (case not ripe when midshipman's potential discharge over

inappropriate tweets "is pending review"); *Smith*, 541 F. Supp. 2d at 13 (service member's challenge to separation proceedings was not ripe because "[n]o final decision on [her] separation has yet been made").

B. <u>Plaintiffs' failure to exhaust administrative remedies renders their claims non-justiciable at this time.</u>

As Defendants explained in their motion to dismiss, claims against the military are generally justiciable only if a plaintiff has fully exhausted administrative remedies. ECF 41 at 19–20. Plaintiffs do not dispute that principle, but instead argue that "RFRA contains no exhaustion requirement." ECF 77 at 8 (emphasis omitted). That argument is based on a fundamental misunderstanding of the exhaustion doctrine, as Plaintiffs appear to be conflating statutory exhaustion with prudential exhaustion. *See Island Creek Coal Co. v. Bryan*, 937 F.3d 738, 746–47 (6th Cir. 2019) (distinguishing exhaustion doctrines); *United States v. Seibert*, 403 F. Supp. 2d 904, 920 n.14 (S.D. Iowa 2005) (similar). Only the latter is at issue here given the challenge to the Air Force's decisions. *See Thomas Short v. Berger*, No. 22-cv-00444, 2022 WL 1203876, at *9–10 (D. Ariz. Apr. 22, 2022), *appeal filed*, No. 22-15755 (9th Cir. May 18, 2022). And as the Eighth Circuit has explained, "[i]t is in situations of this type, involving challenge to the retention and promotion of personnel, that the exhaustion requirement finds peculiar applicability. A failure to exhaust the remedies available within the service itself will inevitably upset the balance, carefully struck, between military authority and the power of the federal courts." *Horn v. Schlesinger*, 514 F.2d 549, 553 (8th Cir. 1975); *see also Newport v. Stone*, 97 F.3d 1457 (8th Cir. 1996) (describing *Horn* as "acknowledging and adopting traditional judicial reluctance to interfere with military establishment unless grave constitutional rights appear imperiled").

The Court should also reject Plaintiffs' argument that the intra-service remedies available to them are inadequate. *See* ECF 77 at 9–10. As an initial matter, that theory fails to acknowledge

that the Surgeon General has not reached a final decision regarding the appeals of 16 Plaintiffs. Even as to the remaining active duty and reserve Plaintiffs, however, additional intra-service remedies allow for the possibility that they may be retained notwithstanding their unvaccinated status.

### 1.    Discharge and Separation Procedures

For active duty members of the Air Force, the initiation of separation proceedings for failure to receive a COVID-19 vaccine is just the beginning of an extensive administrative process where members continue to have the right to present evidence and argument that separation would be contrary to statute or the Constitution.

*Officers.*  Commissioned officers facing discharge proceedings who have completed six or more years of active commissioned service are generally entitled to a Board of Inquiry.  *See* AFI 36-3206, Administrative Discharge Procedures for Commissioned Officers, Chapter 7, *available at* https://perma.cc/75UU-DDE5; *see also* AFI 36-3207, Separating Commissioned Officers, ¶ 3.16.1.1 (officers may be dismissed for cause for "failing to meet the prescribed standards of performance and conduct"), *available at* https://perma.cc/VDJ4-R8FM.  A Board of Inquiry may recommend removal or discharge, among other things.  AFI 36-3207 ¶¶ 7.31.1–7.31.4.  If the recommendation is to retain the officer, the member is notified and the action is ended.  *See id.* ¶¶ 4.1–4.1.1; *see also id.* ¶ 4.2.  Commissioned officers with less than six years of active commissioned service who are facing discharge are entitled to present evidence to the appropriate show-cause authority.  AFI 36-3206, Ch. 4; *id.* ¶ 1.1.  Any discharge recommendations from a Board of Inquiry or show-cause authority are reviewed by the Air Force Personnel Board ("AFPB").  *Id.* Ch. 6.  The AFPB may decide to retain the officer on its own initiative.  *See id.*

¶¶ 6.5.1; 6.6.1; 6.9.1.  But if the AFPB recommends removal or other adverse action, the Secretary of the Air Force (or his designee) will make a final decision.  *See id.* ¶ 6.10-6.11.

*Enlisted Airmen*.  The processes for involuntarily separating enlisted members of the Air Force are described in AFI 36-3208, Administrative Separation of Airmen, *available at* https://perma.cc/L8VJ-3X82.  If an enlisted Airman facing discharge has served in the Air Force for six or more years, or if the Airman is a non-commissioned officer, the Airman "must be offered an opportunity for a hearing by an administrative discharge board." *Id.* ¶ 6.2.2; *see also id.* Ch. 8 (Administrative Discharge Boards).  If a board recommends the member be discharged, the approval authority may (1) direct retention, (2) direct execution of an honorable discharge, (3) direct execution of a general discharge, or (4) authorize an honorable or general discharge but suspend the discharge for probation and rehabilitation.  *Id*. at Table 6.11.  If a board recommends retention, the approval authority may not authorize discharge, but may only (1) direct retention or (2) forward a recommendation to the Secretary of the Air Force for discharge.  *Id*.

For those enlisted Airmen who are not eligible for an Administrative Discharge Board, the process is initiated by the unit commander and the decision authority is generally a Special Court-Martial Convening Authority in the member's chain of command.  *Id.* ¶ 5.56; *see also* ¶ 6.9 (describing steps for initiating commander).  The Special Court-Martial Convening Authority "personally approves or disapproves recommendations for discharge" when the basis is misconduct and may (1) retain the member or (2) direct a general discharge.  *Id*. ¶ 5.56.  If the Special Court-Martial Convening Authority recommends an honorable discharge based on misconduct, that recommendation is forwarded to the General Court-Martial Convening Authority, who may approve or disapprove that recommendation.  *Id*. ¶ 5.56.2.

2. Reassignment to the IRR

Before members of the Air Force Reserve are transferred to the IRR, they will receive a notification that their command recommends transfer to the IRR for failure to comply with the COVID-19 vaccine requirement. AFI 36-2110, Total Force Assignments, ¶ 11.5.1.1, *available at* https://perma.cc/7RB4-PWEY. After receiving the notification, a member may submit written statements or documents to challenge the transfer recommendation. *Id.* ¶ 11.5.1.5. Documents for any appeal are generally due within 15 days after the individual is notified of the transfer recommendation. *Id.* ¶ 11.5.1.7. The Air Force provides legal counsel to help with any appeal at no cost to the member, or individuals may use their own private counsel. *Id.* ¶ 11.5.1.4.

3. Review Boards

Even if a member of the Air Force is disciplined, the Air Force provides additional avenues for administrative review, including the Air Force Discharge Review Board and the Air Force Board for Correction of Military Records ("AFBCMR"). 32 C.F.R. § 865.112(f) & (i) (Discharge Review Board can review whether "a certain course of action violated his or her constitutional rights"); 10 U.S.C. § 1552(a)(1) (AFBCMR is empowered to "to correct an error or remove an injustice"); AFI 36-2603, Air Force Board for Correction of Military Records, *available at* https://perma.cc/6HJ5-JUPP. Binding circuit precedent requires that Plaintiffs bring their case to the AFBCMR before challenging the Air Force's decision-making in court. *Fuller v. Sec'y of Def. of U.S.*, 30 F.3d 86, 89 (8th Cir. 1994); *Watson*, 886 F.2d at 1010–11.

Accordingly, in asking whether these additional remedies may "overturn the Air Force Surgeon General's denial of a RAR appeal[,]" ECF 77 at 9, Plaintiffs have once again "incorrectly framed the . . . question[,]" Mem. & Order at 37. Rather, the salient question is whether, as a result of these remedies, Plaintiffs may be retained notwithstanding their refusal to receive a dose of the

COVID-19 vaccine. Because the answer is "yes," Plaintiffs must utilize these remedies before bringing suit. *See Horn*, 514 F.2d at 552; *Mark Short v. Berger*, No. 22-cv-1151, 2022 WL 1051852, at *4 (C.D. Cal. Mar. 3, 2022) (concluding that "Plaintiff has not exhausted administrative remedies," because "[a]lthough he has received a decision on his appeal, he still must undergo separation proceedings before any permanent adverse consequences are imposed"); *Church v. Biden*, --- F. Supp. 3d ---, 2021 WL 5179215, at *11 (D.D.C. Nov. 8, 2021).

Plaintiffs take particular exception to the requirement that they must exhaust their claims through the AFBCMR. ECF 77 at 10–11. Relying on *Glines v. Wade*, 586 F.2d 675, 678 (9th Cir. 1978), Plaintiffs emphasize that the AFBCMR "does not have the authority to declare law[.]" *Id.* The Eighth Circuit, however, has not excused exhaustion where the cognizant review board can correct legal errors (including require reinstatement) but not "declare law." *See, e.g.*, *Watson*, 886 F.2d at 1008 ("Exhaustion of administrative remedies before the ABCMR is required in this circuit."). Plaintiffs also fail to note that *Glines* is likely no longer good law within the Ninth Circuit, as it preceded the Ninth Circuit's adoption of the *Mindes* test. *See Wallace v. Chappell*, 661 F.2d 729, 733 (9th Cir. 1981). Indeed, since adopting the *Mindes* test, the Ninth Circuit has indicated that exhaustion through the AFBCMR would be required if the board could provide the relief sought by a plaintiff. *Christoffersen v. Wash. State Air Nat'l Guard*, 855 F.2d 1437, 1442 (9th Cir. 1988) ("If the Records Board determines that an officer's nonretention was the consequence of error or injustice, it can correct federal records to show that federal recognition has not been withdrawn and can reinstate the officer in a comparable active federal reserve status, restore his pay, and order compensatory back pay."); *accord, e.g.*, *Yongo v. U.S. Army Active Duty Def. Fin. & Acct. Servs.*, No. 5:07-cv-93, 2007 WL 9770249, at *1 (E.D.N.C. May 2, 2007) ("Instead of pursuing the intraservice remedy available to him in the form of an appeal to the

[Army Board for Correction of Military Records] under 10 U.S.C. § 1552 and Army Regulation (AR) 15-185, plaintiff filed suit in federal district court seeking injunctive relief and monetary damages. As a result, plaintiff[] has no likelihood of success on the merits of his case because he has failed to exhaust his administrative remedies."); *Navas v. Gonzalez Vales*, 592 F. Supp. 757, 762-63 (D.P.R. 1984) ("Plaintiff may appeal defendant's decision before the Army Board for Correction of Military Records. The Army Board for Correction of Military Records has the power to reinstate plaintiff and provide him with back pay if it should deem he has such a right. . . . Since the first step of the *Mindes* test is not satisfied, plaintiff has failed to present a reviewable claim."), *aff'd*, 752 F.2d 765 (1st Cir. 1985).

Plaintiffs cannot escape the strictures imposed by *Watson* by insisting that the case stands for the proposition that "the BCMR has very limited authority" and review is appropriate now because Plaintiffs' claims are "first-order constitutional and legal questions[.]" ECF 77 at 12. Contrary to Plaintiffs' argument, *Watson* established that challenges to military decisions are generally non-justiciable, except where the service member brings (1) a "facial challenge[] to the constitutionality of a military regulation or statute"; or (2) "claims seeking limited judicial review of final agency action," in which case review by the records board is required. *Wood v. United States*, 968 F.2d 738, 739–40 (8th Cir. 1992) (discussing *Watson*); *see also Watson*, 886 F.2d at 1010–11. As Defendants previously noted, ECF 41 at 20 n.11, Plaintiffs here do not assert a facial challenge—and Plaintiffs, for their part, do not contend otherwise, *see generally* ECF 77 at 12; *cf. Navy SEAL 1 v. Austin*, No. 22-cv-0688, 2022 WL 1294486, at *3 n.2 (D.D.C. Apr. 29, 2022) ("Although Plaintiff's briefing sometimes speaks in terms of a facial challenge, by virtue of the relief sought, Plaintiff's challenge appears to be as-applied."), *appeal filed*, No. 22-5114 (D.C. Cir. May 5, 2022). Thus, before they may establish the justiciability of their claims, Plaintiffs must

satisfy the final agency action requirement, including review by the AFBCMR. To date, no Plaintiff has done so.

C.   Exhaustion is not futile.

According to Plaintiffs, they should be excused from complying with the exhaustion requirement because exhaustion would be futile. ECF 77 at 15–16. But even if it is likely that Plaintiffs' religious exemption request will ultimately be denied, courts have correctly found that the fact that a plaintiff anticipates an unfavorable outcome does not render the remedies futile so as to excuse an exhaustion requirement. *Horn*, 514 F.2d at 553; *see also, e.g.*, *Hodges v. Callaway*, 499 F.2d 417, 423 (5th Cir. 1974) ("The administrative remedy available to grievants like [the plaintiffs] may offer cold comfort and small consolation, but it is surely beyond [this Court's] authority to permit the exceptions to the exhaustion doctrine to swallow the rule."); *Pullins v. West*, No. 93-3355, 1994 WL 447268, at *3 (7th Cir. Aug. 19, 1994) (stating that "[t]he fact that [a plaintiff] may have no faith in it, evidently because of his anticipation that his grievance will be rejected, is not sufficient to render the procedure itself futile"); *Mark Short*, 2022 WL 1051852, at *4 (rejecting futility argument and noting that "[t]hough the rate of success on appeal is admittedly quite low, it is not zero"); *Shaw v. Austin*, 539 F. Supp. 3d 169, 183 (D.D.C. 2021) ("Despite Plaintiff's skepticism about the show-cause process, the Court cannot so easily dismiss the possibility that he will have a fair opportunity to make his case to a Board of Inquiry."); *Bickel v. Del. Air Nat'l Guard*, No. 2:18-cv-00119, 2018 WL 2183296, at *7 (S.D. Ohio May 11, 2018) ("This Court has no reason to believe that the board, once convened, will not fulfill its responsibility of being impartial and give Col Bickel a fair hearing."). This argument also apparently focuses only on the religious accommodation process, and Plaintiffs do not plausibly

allege that undergoing the required administrative procedures related to administrative discharge, reassignment to the IRR, or the AFBCMR would be futile.

Plaintiffs next reframe their argument as one regarding the adequacy of the additional remedies. *See* ECF 77 at 15–16. But as explained above, *supra* at Part I.B, that argument lacks any basis in fact or law, *see also Bois v. Marsh*, 801 F.2d 462, 468 (D.C. Cir. 1986) (no exception to exhaustion applied where "no reason has been advanced to suggest that the ABCMR [Army Board for Correction of Military Records] lacks the power to provide Bois with complete relief or that it would not fairly consider all her claims"); *cf. Von Hoffburg v. Alexander*, 615 F.2d 633, 641 (5th Cir. 1980) (exhaustion required as to plaintiff's claim regarding her honorable discharge, but not required as to monetary damages claim because "[i]t is clear that appeal to the ABCMR cannot adequately resolve" that claim).

Nor can Plaintiffs plausibly argue that exhaustion would be futile for the Air National Guard Plaintiffs because no initial decision has been made with respect to their religious accommodation requests. ECF 77 at 16. Notwithstanding the contradiction between that argument and Plaintiffs' assertion that "Defendants are moving with unrelenting speed to deny the RARs and RAR appeals of Plaintiffs[,]" *id.* at 2, there is no basis to find that Defendants have "constructive[ly] deni[ed]" Plaintiffs' requests, *contra id.* at 16, particularly as the Air National

Guard has explained that it is actively processing a heavy volume of religious accommodation requests, Decl. of Charles Nichols Jr. ¶ 8, ECF 38-8.[2]

The other cases cited by Plaintiffs do not support their futility argument. Plaintiffs primarily rely on the Fifth Circuit's decision in *U.S. Navy SEALs 1-26*. ECF 77 at 15. While Defendants disagree with the reasoning in that case, it is ultimately inapposite—the Fifth Circuit determined that exhaustion was not necessary because at that point the Navy had not granted any religious accommodation requests. *U.S. Navy SEALs 1-26 v. Biden*, 27 F.4th 336, 347 (5th Cir. 2022). Here, by contrast, the Air Force has approved 85 requests. DAF COVID-19 Statistics, https://perma.cc/T43B-YKL5; *see also* Mem. & Order at 4 ("The Air Force has demonstrated that its process for consideration of religious exemptions was not simply 'theater' or 'a sham,' but was a process that adhered to the requirements of the law, most specifically RFRA."). Likewise, *Navy SEAL 1 v. Austin*, ---F. Supp. 3d---, 2022 WL 534459, at *14 (M.D. Fla. Feb. 18, 2022), cited in ECF 77 at 15, is of no persuasive value, both because its dicta regarding futility is based on *Navy SEALs 1-26* and because the plaintiffs had in fact exhausted available remedies.[3]

---

[2] The case on which Plaintiffs rely involved a private-party dispute arising under ERISA. *Theil v. United Healthcare of Midlands, Inc.*, No. 8:00-cv-426, 2001 WL 574637, at *3 (D. Neb. Jan. 23, 2001), cited in ECF 77 at 16. Nothing in that case indicates that, in a suit against the Government—and the military in particular—passage of eight months allows a plaintiff to forgo possible administrative remedies, especially where, as here, the agency is actively considering the requests. Similarly distinguishable is *Hicks v. Parker*, 349 F. App'x 869, 871 (5th Cir. 2009), cited in ECF 77 at 16, not only because Plaintiffs cannot show that they will "never receive[] a response[,]" but also because the Fifth Circuit held that the plaintiff's "failure to pursue his grievance remedy to conclusion constitutes a failure to exhaust his administrative remedies." *Id.*

[3] Plaintiffs claim that "Defendants transferred four Air Force Reserve Plaintiffs to No Points/No Pay status, in direct violation of the assurances Defendants made to this Court." ECF 77 at 2. Plaintiffs plainly misrepresent Defendants' statement, which provided that "the Air Force will withhold further action on any discharge, or transfer to the Individual Ready Reserve until the date when Plaintiffs' Motion for Preliminary Injunction (ECF 20) is decided by this Court." ECF 33 at 4. Plaintiffs' mischaracterization does nothing to advance their argument; there are enough disputes between the parties here without the need to invent more.

## II. **Each of the 36 Plaintiffs should be severed into a separate civil action.**

Plaintiffs in this case do not meet either of the requirements for joinder under Rule 20, and, even if they did, the Court should exercise its discretion to sever their claims to promote economy and organized case management and to avoid prejudice to Defendants.

### A. Plaintiffs assert rights to relief arising out of different occurrences.

Plaintiffs' claims do not arise from the same occurrence or series of occurrences. To decide each Plaintiff's respective RFRA claim, the Court will have to determine whether each individual Plaintiff has "show[n] that the government substantially burdens a sincere religious exercise or belief." *Sharpe Holdings, Inc. v. U.S. Dep't of Health & Hum. Servs.*, 801 F.3d 927, 937 (8th Cir. 2015), *vacated on other grounds*, No. 15-775, 2016 WL 2842448 (U.S. May 16, 2016), and whether any burden "to the person" is in furtherance of a compelling interest and is the least restrictive means of achieving that interest, 42 U.S.C. § 2000bb–1(b). The Government must separately make this latter showing as to each "particular claimant whose sincere exercise of religion is being substantially burdened." *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006). Plaintiffs' circumstances differ, however. They generally serve at different bases, under different commanders, and in different fields and job positions, and any denial of a religious accommodation was based on each Plaintiff's particular circumstances. ECF 41 at 25–27.

Plaintiffs insist that the "occurrence" giving rise to all of their claims is DoD's broader COVID-19 vaccination requirement. ECF 77 at 18–19. But that paints with too broad a brush. The vaccination requirement itself does not violate RFRA because it allows for religious exemptions; any alleged burden is based on the *implementation* of that requirement. ECF 41 at 7–12; Compl ¶¶ 26–61. Plaintiffs thus cannot persuasively rely on cases involving allegedly discriminatory policies writ large. In *Tridle v. Union Pacific Railroad Co.*, the plaintiffs worked

at the same location, in the same department, with the same duties, and they all alleged the same kind of injuries resulting directly from their employer's "general policies, procedures, and programs." No. 8:08-cv-0470, 2009 WL 1783558, at *2–3 (D. Neb. June 22, 2009). Similarly, in *Brown v. City of Omaha*, the court found joinder warranted because the plaintiffs alleged "systemic" discrimination stemming from the defendants' "formal policies, practices[,] and customs." No. 8:05-cv-0457, 2006 WL 8458386, at *2 (D. Neb. Sept. 29, 2006); *see also Mosley v. Gen. Motors Corp.*, 497 F.2d 1330, 1333–34 (8th Cir. 1974) (challenges to the same discriminatory "company-wide policy" arise out of same transaction or occurrence).

By contrast, *Harris v. Union Pacific Railroad Co.* is more akin to Plaintiffs' circumstances; here, as there, Plaintiffs' claims all relate in part to a common policy—the vaccination requirement—but their claims ultimately "hinge on distinct facts that are unique to each plaintiff and, thus, do not arise out of the same transaction or occurrence." No. 8:16-cv-0381, 2020 WL 4504392, at *2 (D. Neb. Aug. 5, 2020). That is, they "involve individualized elements of proof." *Id.* at *3. For that reason, they do not arise from the same occurrence or series of occurrences.

Plaintiffs alternatively argue that any denials of their requests for religious accommodation are effectively a single occurrence because, in their view, none of the requests were individually adjudicated. ECF 77 at 19-20. But the Court has correctly concluded that "Defendants made *individualized* determinations of the harm to the Air Force's compelling interests in readiness and health and safety of service members, including the individual applicants, of granting specific exemptions to particular religious claimant." Mem. & Order at 31 (emphasis added).

B. <u>No common legal or factual issues will arise.</u>

Plaintiffs contend that not all questions of fact and law need to be in common to allow joinder. *See* ECF 77 at 24. But merely asserting rights under the same statute or constitutional provision does not automatically authorize joinder. ECF 41 at 29-30; *see also Mosley*, 497 F.2d at

1334 (Rule 20 does not "establish any qualitative or quantitative test of commonality"). Nor is it enough that each Plaintiff sought a religious exemption from the same vaccination policy. As noted above, the policy itself, which is subject to exemption, does not facially burden religious exercise, and the question of whether actual vaccination unlawfully burdens the religious exercise of any Plaintiff is an individualized inquiry. *See Harris*, 2020 WL 4504392, at *3–4 (each plaintiff was subject to the same fitness-for-duty policy and invoked some of the same statutory bases for recovery, but each plaintiff was evaluated unfit for duty "for a different reason," and so adjudicating their claims would require "unique assessments" of their respective conditions and job functions, meaning that there was no legal or factual commonality to support joinder).

Plaintiffs' cited cases, by contrast, involve direct challenges to a broader policy or practice. In *Brown*, commonality was found because the claims alleged "systematic discrimination." 2006 WL 8458386, at *3. And in *Tridle*, the plaintiffs' work-related injury claims presented a common question about "the adequacy of [the employer's] ergonomic policies and procedures." 2009 WL 1783558, at *2. Because the legal claims here require individualized inquiries into sincere beliefs, compelling interests, and least restrictive means, those cases are inapplicable.

## C. Severance would promote prudent case management and prevent prejudice.

Even if Plaintiffs met the criteria for joinder under Rule 20, the Court should exercise its discretion to sever the claims and avoid having to separately adjudicate 36 different claims on 36 distinct records in a single civil action. ECF 41 at 30–32. Plaintiffs try to distinguish *Crosby* by noting that several of the Plaintiffs there raised objections on other-than-religious grounds. ECF 77 at 26–27. But Plaintiffs ignore that all but one of the *Crosby* plaintiffs claimed a religious exemption, and those common religious-exercise claims were insufficient to prevent severance. (ECF 41-1, Order at 1-2, *Crosby v. Austin*, No. 8:21-cv-2730 (M.D. Fla. Feb. 22, 2022)). And the *Crosby* court's primary motivating factor (overlooked by Plaintiffs) was that the various claims

"would require a separate analysis and involve different proof and different witnesses, located in various places across the country." *Id.* at 3. The same is true here.

More recently, another court in the Middle District of Florida severed 18 service members bringing RFRA challenges to the military's vaccination requirement into separate, more manageably sized actions. Order, *Bongiovanni v. Austin*, No. 3:22-cv-0237 (M.D. Fla. May 24, 2022), ECF 51; Attach. A. The court noted that "each plaintiff will have to show that he or she has a sincere religious conviction that has been burdened by the applicable Defendants' conduct" and "Defendants must demonstrate a compelling interest in enforcing their policy 'to the person'." *Id.* at 33–34. The Court therefore severed the 18 plaintiffs into separate actions by military branch (the largest of which would have only six plaintiffs) to "make these cases more manageable and reduce the risk of prejudice to Defendants by lowering the number of Plaintiffs in each case." *Id.* at 36.

Again, Plaintiffs' cases lend them no support. In *Brown*, the court concluded that there would not be unfair prejudice from joinder because the alleged discriminatory acts were committed in one geographic location by a single decision-making body. 2006 WL 8458386, at *3–4. That is not the case here. While Plaintiffs' appeals were (or, in the event of an initial denial, will be) adjudicated by the Surgeon General, the denials of each of their religious accommodation requests involved each Plaintiff's specific command chain. *See* ECF 41 at 7–9. And unlike *Tridle*, these Plaintiffs' claims do not involve the "same witnesses." 2009 WL 1783558, at *2.

### III.    Once severed, venue will be improper for some Plaintiffs.

Plaintiffs do not dispute that, once the case is severed into 36 actions, many Plaintiffs' claims will be improperly venued in this district. ECF 41 at 32–33. Plaintiffs assert only that, if severed, they would be prejudiced by a dismissal rather than transfer. ECF 77 at 29. Plaintiffs do

not deny that they are all within their statute of limitations. They contend only that they would suffer prejudice because Defendants are moving quickly to adjudicate their appeals of the denials of their religious accommodation requests, and dismissal will make it difficult for them to "obtain preliminary injunctive relief soon enough to keep them in the Air Force or Air Force Reserve after refiling in a different district." *Id.* This Court, however, has already held that no Plaintiff in this case is entitled to preliminary relief. So Plaintiffs' alleged desire to obtain such relief in the future is no grounds for transferring rather than dismissing their claims for improper venue.

## IV.    The adjutant generals are not proper defendants.

Plaintiffs go on at length about the nature of the National Guard and the fact that the National Guard Plaintiffs in this case are not currently "federalized" under Title 10. ECF 77 at 29–31. None of that is relevant. The question is: who is the proper defendant for the claims brought by members of the National Guard? Plaintiffs contend that the Adjutant Generals of Nebraska and Kansas are the proper defendants because they have the authority to take personnel actions for failure to comply with the vaccination mandate. ECF 77 at 31. But the statute cited by Defendants makes clear that any action "arising from . . . such a personnel action" shall be brought against the United States as "the sole defendant." 10 U.S.C. § 10508(b)(3). Plaintiffs assert that any personnel actions are "incidental" to the alleged burdens on their religious exercise rights; but the requirement that they be vaccinated is itself a "personnel action." Because the National Guard Plaintiffs have named improper Defendants and refuse to amend their complaint to add the United States as a defendant, their claims should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion to dismiss.

Respectfully submitted,

STEVEN A. RUSSELL
Acting United States Attorney
District of Nebraska

By:  s/ Lynnett M. Wagner
      LYNNETT M. WAGNER, #21606
      TIMOTHY R. HOOK, #24529
      Assistant U.S. Attorneys
      1620 Dodge Street, Suite 1400
      Omaha, NE 68102-1506
      Tel.: (402) 661-3700
      Fax: (402) 661-3081
      lynnett.m.wagner@usdoj.gov

BRIAN M. BOYTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director

ANTHONY J. COPPOLINO
Deputy Director

 s/ Johnny Walker
STUART J. ROBINSON
Senior Counsel
JOHNNY H. WALKER
Trial Attorney
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street NW, Rm. 12304
Washington, DC 20530
Tel.: (202) 514-3183 / Fax: (202) 616-8460
Email: johnny.walker@usdoj.gov

*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to NECivR 7.1(d)(3), I certify this brief complies with NECivR 7.1(d)(1). Relying on the word-count function of Microsoft Word, this document contains 6,492 words. The word-count was applied to all text, including the caption, headings, footnotes, and quotations.

s/  Johnny Walker
JOHNNY H. WALKER